IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO: _____ |
| v. | : | DATE FILED: _____ |
| THOMAS STASZAK | : | VIOLATIONS:<br>18 U.S.C. § 666(a)(1)(A), (b) (federal program theft - 2 counts)<br>18 U.S.C. § 1030(a)(4), (c)(3)(A) (computer fraud - 9 counts)<br>Notices of forfeiture |
| | : | |
| | : | |

## INDICTMENT

## COUNT ONE

**THE GRAND JURY CHARGES THAT:**

At all times material to this indictment:

1. The Philadelphia Water Department (PWD) in Philadelphia, Pennsylvania was a public utility that planned for, operated, and maintained both the infrastructure and the organization necessary to purvey quality drinking water, to provide an adequate and reliable water supply for all household, commercial, and community needs, and impacted the region's watersheds and quality of life by managing wastewater and stormwater. PWD provided safe water for area residents to drink, supplied water for industries to manufacture goods, and was charged with protecting the region's water resources.

1

2. PWD was an organization that received federal funds and assistance in excess of $10,000 annually in calendar years 2017 and 2018.

3. PWD's water service area was 130 square miles. The City of Philadelphia obtained approximately 57% of its water from the Delaware River and the balance from the Schuylkill River. The combined rated treatment capacity of PWD's water treatment plants was 546 million gallons per day (MGD). Additionally, PWD provided up to 35 MGD of water to Bucks County Water and Sewer Authority.

4. PWD's wastewater service area totaled 360 square miles. Of those, 130 square miles were in the City of Philadelphia and 230 square miles were in suburban areas. The wastewater system consisted of three water pollution control plants, 21 pumping stations, approximately 3,657 miles of sewers, and a privately managed centralized biosolids handling facility. PWD's wastewater system impacted the water quality of the Delaware River, thereby fostering both public and private development of the riverfront for commercial, residential, and recreational use.

5. PWD purchased wire, packing for pumps, and other materials in bulk and kept the materials in inventory at various storage facilities ("Stores") throughout the City of Philadelphia, including at PWD's Southwest Store site (SW), for use in maintaining and repairing PWD's infrastructure. PWD could then draw on those materials as needed to address various maintenance issues.

6. PWD utilized a computerized inventory control system. To access the system, an authorized employee would log on using a PWD computer workstation. A successful log-in required entry of a valid employee username and the password corresponding with the username. PWD assigned usernames employing a format which included the employee's last name and first

PWD assigned usernames employing a format which included the employee's last name and first initial. When an employee was first hired at PWD, the employee was assigned a default password. Employees were directed to change the default password to a unique, personalized password, but not all PWD employees did.

7. In order to obtain materials from a PWD Store for maintenance needs and other legitimate purposes, after logging onto the inventory control system, a PWD Store employee would complete an electronic "issue," that is, an electronic request for materials to be issued from the inventory. The "issue" documented the date and time of the request for materials and also recorded the log-on information for the PWD Store employee accessing the inventory control system to enter the request. The "issue" also recorded to whom the materials were to be given and their ultimate destination. In the ordinary course of PWD's business, a paper or hardcopy "issue slip" was also completed and required the signature of a PWD employee authorized to release the materials from PWD's inventory. The "issue slip" was supposed to be turned in at PWD's Store by the PWD employee physically picking up the materials. At the Store, upon receiving the materials, the employee was supposed to sign the "pick ticket" and receive a copy of the "issue slip" documenting that the materials were, in fact, taken out of inventory.

8. Defendant THOMAS STASZAK was a Store Supervisor at PWD's SW site. As a PWD Store Supervisor, defendant STASZAK was responsible at SW for the inventory of materials and supervising PWD employees tasked with receiving materials from vendors and issuing the materials to the field as necessary. Defendant STASZAK also worked alongside the

control system without authorization using log-in credentials associated with at least six PWD employees that defendant STASZAK worked alongside or supervised, including, but not limited to, Employee No.1, Employee No. 2, and Employee No. 3, each of whom are known to the grand jury. Defendant STASZAK fraudulently created electronic "issues" for PWD materials for his own benefit, not for PWD, including bulk wire, among other things. Defendant STASZAK also created false entries in PWD's electronic records for the employees purportedly "receiving" the materials, and defendant STASZAK falsified or omitted the paper "issue slips" and "pick tickets" to provide a justification for removing PWD's materials from the SW Store. Defendant STASZAK then physically removed the materials from PWD's SW Store.

10. After obtaining the materials from the SW Store, defendant THOMAS STASZAK transported PWD's materials to local scrap yards in Pennsylvania and New Jersey, and sold the materials, keeping the proceeds. In this fashion, defendant STASZAK stole in excess of approximately $164,000 worth of bulk wire and other materials from PWD. During 2017, defendant STASZAK stole at least approximately $63,860.33 worth of PWD's materials which he then sold. During 2018, defendant STASZAK stole at least approximately $100,017.85 worth of PWD's materials which he then sold.

11. From in or about April 2017 through in or about December 2017, in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendant

**THOMAS STASZAK,**

an agent of PWD, an organization which received benefits of over $10,000 in any one year, under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance and other form of federal assistance, knowingly embezzled, stole, obtained by fraud and otherwise knowingly converted to the use of any person other than the rightful owner, and intentionally misapplied, property that was valued at more than $5,000 and was under the care, custody, and control of the PWD.

In violation of Title 18, United States Code, Section 666(a)(1)(A), (b).

## COUNT TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

1. Paragraphs 1 through 10 of Count One are incorporated herein by reference.

2. From in or about January 2018 through in or about November 2018, in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendant

**THOMAS STASZAK,**

an agent of PWD, an organization which received benefits of over $10,000 in any one year, under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance and other form of federal assistance, knowingly embezzled, stole, obtained by fraud and otherwise knowingly converted to the use of any person other than the rightful owner, and intentionally misapplied, property that was valued at more than $5,000 and was under the care, custody, and control of the PWD.

In violation of Title 18, United States Code, Section 666(a)(1)(A), (b).

## COUNTS THREE THROUGH ELEVEN

**THE GRAND JURY FURTHER CHARGES THAT:**

1. Paragraphs 1 through 10 of Count One are incorporated herein by reference.

2. On or about the dates set forth below, in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendant

## THOMAS STASZAK

knowingly and with intent to defraud accessed a protected computer without authorization, and by means of such conduct furthered the intended fraud and obtained something of value, as set forth below, each unauthorized access constituting a separate count:

| Count | Date of Access | Unauthorized Login Credential | Item | Value |
|---|---|---|---|---|
| 3 | April 28, 2017 | Employee No. 1 | Cable | $4,412.00 |
| 4 | May 1, 2017 | Employee No. 2 | Neoprene Conductor | $2,859.00 |
| 5 | May 8, 2017 | Employee No. 3 | Neoprene Conductor | $1,514.00 |
| 6 | December 5, 2017 | Employee No. 1 | Cable | $22,060.00 |
| 7 | January 16, 2018 | Employee No. 3 | Wire | $1,253.00 |
| 8 | March 15, 2018 | Employee No. 1 | Wire | $4,144.00 |
| 9 | August 22, 2018 | Employee No. 1 | Wire | $3,990.00 |
| 10 | August 22, 2018 | Employee No. 1 | Wire | $9,566.50 |
| 11 | November 9, 2018 | Employee No. 1 | Wire | $1,333.00 |

In violation of Title 18, United States Code, Sections 1030(a)(4) and (c)(3)(A).

## **NOTICE OF FORFEITURE NO. 1**

**THE GRAND JURY FURTHER CHARGES THAT:**

1. As a result of the violations of Title 18, United States Code, Section 666(a)(1)(A), (b) set forth in this indictment, defendant

**THOMAS STASZAK**

shall forfeit to the United States of America any property, real or personal, that constitutes or is derived from proceeds traceable to such property, including, but not limited to, the sum of $163,878.18.

2. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C)).

## **NOTICE OF FORFEITURE NO. 2**

### THE GRAND JURY FURTHER CHARGES THAT:

1. As a result of the violations of Title 18, United States Code, Sections 1030(a)(4) and (c)(3)(A), set forth in this indictment, defendant

### **THOMAS STASZAK**

shall forfeit to the United States of America any property that constitutes, or is derived from, proceeds obtained directly or indirectly from the commission of such violations including, but not limited to, the sum of $163,878.18.

2. If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

 (a) cannot be located upon the exercise of due diligence;

 (b) has been transferred or sold to, or deposited with, a third party;

 (c) has been placed beyond the jurisdiction of the Court;

 (d) has been substantially diminished in value; or

 (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982.

A TRUE BILL:

G█████████RSON

*Ronald Barach for*
_____
**JENNIFER ARBITTIER WILLIAMS**
**ACTING UNITED STATES ATTORNEY**

No._____

## UNITED STATES DISTRICT COURT

Eastern District of Pennsylvania
Criminal Division

THE UNITED STATES OF AMERICA

vs.

THOMAS STASZAK

## INDICTMENT

Counts

**18 U.S.C. §666(a)(1)(A) (federal program theft - 2 counts)**
**18 U.S.C. §1030(a)(4) (computer fraud - 9 counts)**
Notice of Forfeiture

_____ bill.

_____ nan

Filed in open court this _____ day,
Of _____ A.D. 20_____

Clerk

Bail, $_____